GLADNEY, Judge.
Plaintiff’s action is for the recovery of damages for personal injuries received in a vehicular accident which occurred on U. S. Highways 71-190 six and one-half miles west of the Mississippi River traffic bridge at Baton Rouge, Louisiana. Made defendants are Paul Lambert and the insurer of his truck, Girard Insurance Company. Intervening in the case is Maryland ■Casualty Company, workmen’s compensation insurer of Sidney J. Lemoine, employee of plaintiff, who at the time of the accident was engaged in an activity within the course and scope of his employment, the insurer seeking reimbursement for medical, surgical, hospital and compensation payments made to plaintiff. This suit is companion to Lemoine v. Girard Insurance Co. (Lambert), 99 So.2d 491. The two suits were consolidated for the purposes of trial. Judgment was rendered in each case rejecting the demands of plaintiff and intervenor. From the decrees plaintiff and intervenor have perfected appeals.
During the course of the trial the parties in this litigation stipulated the following facts:
“The collision which forms the basis of these suits occurred on Thursday, April 2, 1953, at about 1:50 p. m., between a new 1953 Ford Tudor automobile bearing 1953 Louisiana license No. 406-197 owned and driven by Sidney J. Lemoine of Bunkie, Louisiana, and a 1951 Ford Dump Truck bearing 1952 Louisiana license No. 120-500 owned by Paul Lambert of Simmesport, Avoyelles Parish, Louisiana, and being driven at the time by Henry Lambert, an employee of Paul Lambert, acting in the course of his employment with said Paul Lambert.
“The collision occurred about six and one-half (6já) miles West of the Mississippi River Traffic Bridge at Baton Rouge, Louisiana on highway U. S. 71-190; it was raining at the time of the collision ,and both vehicles, the car and the truck, were proceeding westerly, in the same direction, until a few moments before the collision. Metreades D. Descant, Jr. was a passenger in the Sidney J. Lemoine automobile, at the time of the collision and was moreover acting in the course of his employment with said Lemoine, at the time. The truck operated by Lambert was heavily loaded with gravel (about four (4) cubic yards) at the time.
“The place of the collision was at or near the George Landry Store, which is on the North side of the highway aforesaid, in West Baton Rouge Parish, Loui *493 siana; immediately in front of said store, and across the highway from same, there ■is a gravelled road or lane, leading south from said highway, which is known as Winterville Lane. The main highway at the locale of the collision, is straight, is a four-lane concrete one, two traffic lanes on either side of a slightly elevated neutral ground, about four feet wide. Each half of the said highway, which i-s twenty-four (24') feet wide, is divided by a painted black line; at the point of the collision, and so as to provide a crossing from one side of the highway to the other, the elevated center neutral ground is discontinued for about forty (40') feet, and the entire width of the highway, including this neutral ground, is concrete pavement.
“At the time of the collision, the Gir-ard Insurance Co., of Philadelphia, Pennsylvania, was the Public Liability and Property Damage insurer of both, the Lemoine automobile and the Lambert truck, involved in the collision; the limits on its policy covering the Lemoine automobile were $50,000.00 — $100,000.00 Personal injury, and $10,000.00 Property damage (Policy No. AP15002), and the limits on the insurance policy covering the Lambert truck were $10,000.00 — $20,000.00 for Personal Injuries, and $5,000.00 for Property damage, this latter coverage represented by Policy No. AP15005.”
In addition to the above stipulated facts testimony was adduced, including that of the drivers of the vehicles involved and witnesses who arrived at the locale at about the time of, or soon after the accident occurred. Further evidence presented consisted of medical testimony which disclosed plaintiff sustained serious and painful injuries. Intervenor tendered proof of payments made in connection with plaintiff’s workmen’s compensation claim.
The contention of Descant is that Henry Lambert was negligent in failing to give timely warning of his intention to execute the left turn, and in attempting such maneuver without first ascertaining if it was safe to do so. Further, it is charged Lambert was negligent in blocking the left westbound traffic lane. The defendants, on the other hand, aver the sole and proximate cause of the accident was occasioned by the negligence of Sidney J. Lemoine in failing to maintain a proper lookout and keep his vehicle under proper control, and in driving at an excessive rate of speed alleged to have been seventy miles per hour. No contention is made that Descant was negligent in any manner whatever.
After failing to reconcile the conflicting testimony of Lemoine and Henry Lambert, the two drivers of the colliding vehicles, the trial judge states in his reasons for decision:
“The Court must conclude after considering the testimony of Messrs. Henry Lambert, Francois and Heltz, that Mr. Lemoine was for some reason or other inattentive and distracted and that he was apparently mistaken in his version of what happened. It seems clear that the truck driver, Lambert, did everything that a reasonably prudent man could have been expected to do under the circumstances. He turned on his signal lights — it was testified that they were still on after the collision — at a reasonable distance from where the intersection began, about 1000 feet away, checked his rear view mirror and was just easing into the turn when struck from the rear. The evidence is convincing that this is a substantially accurate account of what happened.”
Sidney J. Lemoine testified that he was driving in the right of the two westbound traffic lanes and for about one-half a mile was slowly overtaking the Lambert truck which was also traveling in the same lane. He said Descant was taking a nap at the time and did not awaken before the accident; that he had been driving at a speed of from forty-five to fifty miles per hour; and after observing there were no other vehicles in the left traffic lane, he decided to pass and signaled his intention to do so by sounding his horn three times when *494 one hundred twenty to one hundred fifty feet or farther from the truck; that when he was from one hundred to one hundred twenty-five feet distant from the rear of the truck its driver without hand warning or indicator lights, proceeded to execute a full left turn at a ninety degree angle across the left westbound traffic láne and suddenly stopped when traffic prevented his crossing the eastbound traffic lanes. He insisted Lambert remained in the right westbound traffic lane at all times until the turning maneuver was attempted at the opening in the intersection; that he immediately applied his brakes but despite this his automobile skidded into the left side of the truck, striking that vehicle at or near the left rear wheel. He further related that Descant’s head and face were severly cut and injured from contact with the windshield and were bleeding so profusely all- of his efforts were directed to attempting emergency operations to stop the flow of Descant’s blood. He said that nonetheless he did observe Lambert back his truck away from its contact with the automobile and drive it to the right side of the highway.
Lambert’s version of the accident is entirely different from that of Lemoine. He testified his truck loaded with five yards of gravel was proceeding “pretty slow” westerly along the highway with the intention of turning left into a little graveled road leading off of the south side of the highway; that it was his first trip and when he reached a point one thousand feet east of thé opening in the neutral ground he turned on his signal lights to indicate the intended turn, looked in the rearview mirror and, upon observing no immediate traffic, “started easing down to turn on the left side”; and that he followed the left lane before struck in 'the rear near the point where the turn would be made through the opening in the neutral ground. He also testified the truck was not damaged on its left side but, on' the rear end and that due to the collision a left rear tire was cut and the truck’s driveshaft was broken; and that he did not give any hand signal but asserts he did employ signal lights. He related he was traveling about twenty-five miles per hour at the time he turned into the left traffic lane and was almost stopped when hit, and that after the impact the truck moved eighty feet forward and into the right of the two westbound traffic lanes, from which point 'it was shoved to the right side of the highway.
Descant, who was asleep at the time of the accident, stated that when awakened he looked up and saw the “whole side of the -body of the truck staring him in the face.” He was unable to contribute further material testimony because soon after he was injured a towel was placed over his face.
Immediately before the contact between the two vehicles John J. Francois, Jr., a state ranger, was traveling east and was about five hundred feet away. He saw the two vehicles collide in the left of the two westbound traffic lanes and stopped to render assistance. He said that the force of the collision moved the truck forward and toward the right a distance of thirty to forty feet to a point of rest; that gravel was deposited on the surface of the highway approximately at the center of the opening in the neutral ground where Lambert anticipated executing his left turn; and that the damage to the truck body was confined to the back end.
State Trooper Henry A. Heltz testified he arrived at the scene of the accident about one-half hour after it occurred and found the Lemoine Ford blocking the left traffic lane and the truck was stationary in the right traffic lane; that in front of the Ford he saw a deposit of gravel that spilled from the truck at the time of the impact; that he located the point of impact as being in the left lane; that the collision- caused the truck to go forward about thirty feet and when he attempted to have it moved it had to be shoved onto the right shoulder; that he measured the skid *495 marks of the Ford to the point of impact and these were thirty-four steps or about one hundred two feet; that no damage was inflicted upon the left side of the body of the truck and all of its damage was to the left portion of its rear end. He expressed the opinion, based on the length of the skid marks and the effect of the impact, that Lemoine must have been traveling sixty miles per hour. Further, he opined that a maximum safe speed under the then prevailing weather conditions and heavy traffic conditions on the highway, was forty-five miles per hour.
Paul Lambert was likewise called as a witness, but was able to contribute little, if any, probative evidence toward the cause of the collision.
It seems clear from our analysis of the testimony of the above witnesses, it is of first importance to determine if Henry Lambert had moved into the' left westbound traffic lane before reaching the turning point and opening in the neutral ground, and forasmuch as the ’ testimony of Henry Lambert and Sidney J. Lemoine is so contradictory on this point we should carefully weigh the evidence pertaining to physical facts and look for corroborating testimony from other witnesses. The preponderance of the evidence shows that when struck the truck had completely preempted the left west traffic lane and was headed straight toward the west and in position to turn. This must be inferred from the physical evidence of damage to the body of the- truck, all of which was located on its rear end, and from the absence of damage to the side of the truck.
We must conclude, as did the trial judge, that Lemoine was not keeping a proper lookout or was driving entirely too fast under the prevailing road conditions. Otherwise, it would be difficult to explain how the accident could have occurred.
It is, therefore, our holding that the sole proximate cause of the accident was the negligence of Sidney J. Lemoine' as above specified. Because of this finding it follows that the demands of plaintiff cannot prevail.
For the reasons hereinabove set forth, the judgment from which appealed is affirmed at appellant’s cost.